388 So.2d 1196 (1980)
H. Van HART and Clarence W. Brown
v.
Ryan deGRAFFENRIED, Jr., et al.
Howard T. PLOTT
v.
Annie Laurie GUNTER as Treasurer of the State of Alabama, et al.
79-33, 79-46.
Supreme Court of Alabama.
August 8, 1980.
Rehearing Denied September 26, 1980.
*1197 William P. Gray of Tucker, Gray & Espy, Tuscaloosa, for appellants Hart and Brown.
David M. Tanner, Birmingham, for appellant Howard T. Plott.
Oakley Melton, Jr., of Melton & Espy, Montgomery, for appellees McDowell Lee and John Pemberton.
Charles A. Graddick, Atty. Gen., Lee L. Hale, Deputy Atty. Gen., and Carol Jean Smith, Asst. Atty. Gen., for appellees.
MADDOX, Justice.
The Alabama Legislature, by a joint resolution adopted at an organizational session, increased the per diem and monthly expense allowances for legislators.
These two cases[1] present the issue of the constitutionality of that resolution (Senate Joint Resolution 13) which was adopted at the 1979 Organizational Session, increasing by $15 and $100, respectively, the per diem and monthly expense allowances for legislators. The trial court found that the legislators did not violate the constitution by adopting the resolution at its organizational session, and that the Legislature could increase its expense allowances by the adoption of a joint resolution.
Appellants raise the following issues:
(1) Could the Alabama Legislature fix or alter the amount of legislative expense allowances by the adoption of a joint resolution?
(2) Could the Legislature take action on legislative expense allowances during the course of an organizational session?
(3) Does S.J.R. 13 violate Article XVII, Section 281 and amendment 92 of the Alabama Constitution, because it increases the compensation being paid to legislators during the term for which they were elected?
(4) Does S.J.R. 13 violate Article IV, § 72 of the Alabama Constitution by requiring the payment of money out of the State treasury without an appropriation?
For the reasons hereinafter set out, we find that the Legislature acted within the powers granted to it by the Constitution; therefore, we affirm the judgment of the trial court.

I
Prior to the enactment of Amendment 57, Article IV, Section 49 of the Alabama Constitution was recognized as the exclusive governing authority on the fixation of legislative compensation and expense allowances. The provisions of that section were quite simple and did no more than establish a scheme of remuneration whereby legislators were to receive "... four dollars per day, and ten cents per mile in going to and returning from the seat of government, to be computed by the nearest usual route traveled"; however, this language was perceived as effectuating an express limitation *1198 on the otherwise plenary power of the Legislature. As noted by this Court in Hall v. Blan, 227 Ala. 64, 148 So. 601 (1933):
"For more than half a century, we think it can be safely said, this section [§ 49] of the Constitution has been generally construed as fixing and withdrawing from legislative power, the matter of personal compensation and expense allowances to legislators while in attendance at legislative sessions. Such has been the widely prevailing construction of similar constitutional provisions in other states."
The preclusion thus erected by § 49 did not remain, however. The people, by adopting subsequent constitutional amendments, changed the means by which legislative expense allowances could be established.
Amendment 57 of the Constitution, ratified in November of 1946, presently stands as the governing constitutional section on legislative expense allowances. It is the language of this amendment, which the people approved, which sets out the limits of legislative power. The portions of Amendment 57 pertinent for purposes of the present appeal read as follows:
"The pay of members of the legislature shall be ten dollars per day. Each member of the legislature shall be paid ten cents per mile in going from his residence to, and in returning to his residence from, the seat of government, to be computed by the nearest usual route traveled; and not more than one such travel allowance shall be paid for each session of the legislature. In addition to his travel allowance, each member of the legislature also shall be allowed expenses, other than actual expenses of traveling, not exceeding an amount to be fixed by the legislature, incurred in the performance of his duties; but such expense allowance shall not be less than the smallest allowance to any other person traveling within the state in the service of the state of Alabama, or any of its agencies, for expenses other than actual expenses of traveling." (Emphasis added.)
These provisions operated to effectuate a partial reversal of the approach once mandated by the provisions of Section 49, restoring to the Legislature the plenary power and authority to act in matters concerning legislative expenses. The constraints once imposed upon the plenary power of the Legislature by Section 49 were thus removed by Amendment 57. Matters of personal compensation remain beyond the scope of legislative province because the amount of compensation is specifically fixed by the Constitution; however, plenary power has been restored with regard to the fixation of legislative expense allowances. Recognizing this restoration of power, we raise this question: How is the Legislature entitled to act?
The appellants argue that the provisions of Amendment 57 empower the Legislature to effect legislative expense allowances only through the enactment of a law. We, however, cannot adhere to such a strict interpretation. To follow the appellants' argument would require this Court to interpret the language of Amendment 57 as an implied limitation on legislative power. We do not believe the people intended to restrict legislative power so narrowly. The Legislature is laden with a broad form of governmental power which is plenary in character, and subject only to those express limitations appearing in the Constitution. As noted by this Court in County Board of Education v. Taxpayers and Citizens, 276 Ala. 472, 163 So.2d 629 (1964):

"There are no limits to the legislative power of state governments save those written into its constitution. All that the legislature is not forbidden to do by the organic law, state or federal, it has full power to do. The power of the legislature except as limited by constitutional provisions is as plenary as that of the British Parliament. Finklea v. Farish, 160 Ala. 230, 49 So. 366; State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283." (Emphasis added.)
See also Hall v. Underwood, 258 Ala. 392, 63 So.2d 683 (1953), and Riley v. Bradley, 252 Ala. 282, 41 So.2d 641 (1948).
*1199 We hold that Section 49 no longer stands as a limitation on the plenary power of the Alabama Legislature to enact S.J.R. 13. By virtue of Amendment 57, the Legislature now has express authority to "fix" expense allowances. We hold that it may do so in the manner in which it deems most appropriate. S.J.R. 13 was a proper exercise of legislative discretion in fixing expense allowances and was adopted well within the bounds of the Legislature's plenary power. Its validity is, therefore, due to be upheld.

II
The second issue raised by the appellants focuses upon the forum within which S.J.R. 13 was adopted, i. e., at an organizational session. In resolving this issue, we once again turn to the provisions of Amendment 57, which sets forth the purpose of organizational sessions and the manner in which they are to be conducted.
Pursuant to the provisions of Amendment 57, organizational sessions are authorized for the purpose of organizing the Legislature in conducting its affairs. A key limitation on the usage of these sessions is that no legislative business can be conducted. The appellants argue that the matter of increasing the legislators' expense allowances is a business consideration, in no way related to the organization of the Legislature. They thus contend that S.J.R. 13 is unconstitutional because the Legislature was without power to adopt a resolution on a business matter at an organizational session. We disagree with appellants that providing for the expense of the Legislature was constitutionally impermissible at an organizational session.
In In re Opinion of the Justices, 248 Ala. 590, 29 So.2d 10 (1947), this Court grappled with the question of what was meant by the phrase "organization of the legislature." In striving to ascertain whether the appointment of interim committees constituted "doing business" or "organization," the Court at 248 Ala. 594, 29 So.2d 13, reasoned:
"Speaking of the organization of corporations generally, the word `organization' has a well-understood meaning, that is, not only the election of officers, the subscription to the capital stock, the adoption of by-laws, but, also, such other steps as are necessary to endow the legal entity with the capacity to transact the legitimate business for which it was created. 30 Words & Phrases, Perm.Ed., p. 284. So, we are persuaded here that the word `organization' should properly be interpreted as giving to the Legislature the power to appoint these committees which it deems necessary for the purpose of gathering information for the business of the Legislature when it reconvenes in its regular May session. Organization is in fact preparation for the transaction of business, and the appointment of these committees is an appropriate part of such preparation." (Emphasis added.)
Adhering to this interpretation, it is the opinion of this Court that the fixation of legislative expense allowances is an appropriate part of preparation for the transaction of business. In carrying on the affairs of the Alabama Legislature, expenses will be incurred by legislators in attending to the conduct of legislative business. Making determinations beforehand concerning the award of expense allowances is an appropriate and necessary consideration in preparing for the carrying on of legislative business. In other words, determining how legislators will be reimbursed for expenses incurred in carrying on the business of the Legislature is a part of organization and preparation, rather than a part of the business itself. We, therefore, find no error with the trial court's treatment of the second issue.

III
The third argument advanced by the appellants is that S.J.R. 13 is in violation of Article XVII, § 281 and Amendment 92 of the Alabama Constitution, in that it increases the compensation of a public official during his term in office. This necessarily raises the question of whether any portion of the increased expense allowances represents compensation for services rendered as *1200 opposed to reimbursement for expenses incurred.
The trial court in initially dealing with this question alluded to case authority in companion jurisdictions which dealt with the fine distinction between compensation and expense. In applying cases to the present facts, the trial court held:
"There is case law from other jurisdictions which turns on the technical distinction made between salary (compensation) and expenses. Manning v. Sims, 213 S.W.2d 577 (Sp.Ct.APP.Ky.1948), held that the allowance of reasonable expenses incurred in the discharge of official duties of an office is neither salary, compensation, nor emoluments of office within the purview of a constitutional prohibition against a change in compensation during the term. Peay v. Nolen [157 Tenn. 222] 7 S.W.2d 815 (Tenn.1928), is also directly applicable to the instant decision. The court in Peay did not sustain the expense increase, but it held that the appropriation there was too large to be considered an increase in expenses; rather, the court said that the appropriation in gross was large enough to suggest that the increase in expense was a disguised increase in compensation. The court quoted a treatise on the subject:
`Where the compensation is fixed by constitution, or where there is a [constitutional] provision prohibiting such change during the term of an incumbent, no change of salary during such term is permissible.... [S]uch limitations do not affect provisions for expenses, except that use may not be made of a power to increase an allowance for expenses so as to increase compensation received by an officer.'
29 Cyc. 1427-1429. Plaintiffs in the present case, did not question the reasonableness of the increase in expenses; however, the Court, based on the testimony of Dr. Bird, finds that the increases are reasonable. The Tennessee court in Peay held that legislators can be reimbursed only for expenses incurred in the discharge of official duties-not for personal expenses. The Alabama Amendment, however, allows expenses `incurred in the performance of [his] duties'; this phrase necessarily includes the expenses of both meals and lodging."
We agree with the trial court's treatment of the issue, but note that there is disagreement among jurisdictions concerning the appropriate treatment of this issue. See generally 81A C.J.S. States § 47 (1977). The appellants cite Gallarno v. Long, 214 Iowa 805, 243 N.W. 719 (Iowa 1932), and Opinion of the Justices, 159 Me. 77, 190 A.2d 910 (1963), which hold that expense allowances awarded to legislators for the payment of personal expenses (i. e., expenses incurred for rooms, meals, laundry, communications with their homes, etc.) are compensation within the meaning of their respective state constitutions; however, there is equally compelling authority to the contrary in such cases as In re Interrogatories by the Colorado State Senate, Forty-Sixth General Assembly, 168 Colo. 558, 452 P.2d 391 (1969), Collins v. Riley, 24 Cal.2d 912, 153 P.2d 169 (1944), and State v. Yelle, 7 Wash.2d 443, 110 P.2d 162 (1941).
We are persuaded that under the applicable provisions of the Alabama Constitution the payment of legislative expense allowances has never been considered any part of the personal compensation awarded to Alabama legislators; rather, these expense allowances exist as a means of reimbursing legislators for expenditures incurred in being called away from home in service to the state and in carrying on their official responsibilities. On the basis of this conclusion, we hold that the enactment of S.J.R. 13 does not violate Section 281 or Amendment 92 by increasing a legislator's compensation during his term in office.

IV
The final issue we address is based upon the question of whether there exists any legislative appropriation of monies to pay for the increased expense allowances contemplated under S.J.R. 13. This consideration is significant in view of the provisions of Article IV, § 72 of the Alabama Constitution, *1201 which provides, in part, that "[n]o money shall be paid out of the treasury except upon appropriations made by law...." Appellants contend that since no law was enacted to meet the specific purposes of S.J.R. 13, any disbursement of public monies in payment of the increased expense allowances is unauthorized and unconstitutional.
Appellants erroneously conclude that there was no law passed authorizing the payment of the expense allowances provided for by S.J.R. 13. Section 71 of the Constitution provides, in part, that "[t]he general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state ...." The Legislature, during the 1978 Regular Session passed a general appropriation bill which, in its title expressed this purpose:
"To make appropriations for the ordinary expenses of the executive, legislative and judicial departments of the State... for the fiscal year beginning October 1, 1978."
Act No. 597, Regular Session, 1978, Acts of Alabama, Vol. II, p. 723.
Looking to the provisions of Act No. 597, we conclude that there existed a sufficient appropriation to encompass the increased expense allowances provided for by S.J.R. 13. As noted in Section 71 of Article IV of the Constitution, the general appropriation bill serves the purpose of "embracing" all the ordinary expenses of the Legislature. This necessarily included increased expenses provided for by legislative action, and all other expenses which, although unexpected, were necessary. We, therefore, cannot agree with the appellants in their assertions that a law had to be enacted to meet the specific purpose of S.J.R. 13. Sufficient appropriation had already been made.
For the reasons enumerated above, we find no error in the trial court's treatment of this case. The judgment of the lower court is, therefore, due to be affirmed.
AFFIRMED.
TORBERT, C. J., and JONES, ALMON and SHORES, JJ., concur.
FAULKNER, EMBRY and BEATTY, JJ., dissent.
BLOODWORTH, J., not sitting.
BEATTY, Justice (dissenting):
I dissent in Part II of the majority opinion which classifies the increase in the legislator's expense allowance as a matter of the organization of the legislature. In my opinion the views expressed by Mr. Justice Lawson, dissenting, in In re Opinion of the Justices, 248 Ala. 590, 29 So.2d 10 (1947) are the proper ones and those which should guide the legislature in encompassing the restrictive and presumptive provisions of Amendment 57. Mr. Justice Lawson, at 248 Ala. 595, 29 So.2d 14, wrote:
The restrictive provision is that at this organizational session the Legislature shall transact no business. The permissive features of the amendment are the exceptions to the restrictive provision. It appears clear to me that if the Constitution says that the Legislature shall transact no business except certain types specifically enumerated that it is without power to transact any other type of business....
He further argued at 248 Ala. 597, 29 So.2d 16:
Can it reasonably be argued that since the constitutional amendment does not say that an appropriation bill cannot be passed at this organizational session that such a bill could be passed?
I would, of course, answer the above question in the negative. For these reasons which are obviously as cogent today as they were when originally written, I respectfully dissent.
FAULKNER, J., concurs.
NOTES
[1] The cases were commenced independently in January of 1979, in separate counties. Appellants Hart and Brown commenced their action on January 24, 1979, in the Circuit Court of Tuscaloosa County. On February 20, 1979, the Tuscaloosa Circuit Court transferred this action to Montgomery County where it was consolidated with the action commenced by appellant Plott. This consolidation was prompted by the fact that the cases bore substantially the same issues and allegations, both challenging the constitutionality of S.J.R. 13. After the trial court upheld the validity of the resolution, an appeal was perfected to this Court.